JOHN MASON *versus* CHARLES HUTCHINGS, JR.

The oath of a creditor "that the debtor within named is about to change his residence and abscond beyond the limits of the State," is not a sufficient compliance with the provisions of St. 1835, c. 195, which requires that "no person shall be arrested or imprisoned on mesne process" except "when he is about to depart and establish his residence beyond the limits of the State," &c. and does not authorize the arrest of the debtor.

If the debtor be arrested when the oath taken is thus defective, the arrest is unauthorized, and the officer so arresting is not responsible to the creditor for not complying with the statute provisions applicable to the case of a legal arrest.

The provisions of the statute by which, in certain cases, an arrest may be made, must be strictly complied with.

THIS was a special action of the case against the defendant, as sheriff of the county of Hancock, for the default of one J. P. Fowles, a deputy sheriff under him, in not legally serving the writ hereafter mentioned.

From the report of WESTON C. J. who tried the cause, it appeared that on the 22d Aug. 1836, the plaintiff sued out a writ of attachment against one Jeremiah Jackson, described therein as of the city of New York, and returnable to the then next term of the S. J. Court, to be holden at Bangor, for the county of Penobscot. There was attached to this writ the following certificate : —

" STATE OF MAINE.

" Penobscot, ss. Bangor, Aug. 22, 1836.

" Then personally appeared John Mason, the creditor within named, and made oath that the amount or principal part of the debt claimed by him, the said plaintiff creditor, as aforesaid, is actually due and unpaid ; and that he has sufficient reason to believe, and doth believe, that the debtor within named *is about* to change his residence and abscond beyond the limits of the State with property or means exceeding the amount required for his immediate support.

" Before me, FRANCIS H. UPTON, J. P."

This writ was placed in the hands of Fowles for service, whose return was in these words :

" Hancock, ss.    Aug. 22, 1836.    I have arrested the body of the within named Jackson, and he gave me a pledge for his appearance at court in Bangor.    J. P. FOWLES, Dep. Sh'ff."

At the October Term, 1836, of this Court, judgment was rendered in favor of the plaintiff.    An execution was issued thereon, and seasonably placed in the hands of Fowles, and by him returned " in no part satisfied."

It was admitted that at the return day of the writ, Fowles offered to the plaintiff the benefit of the pledge taken by him, which he declined receiving.

Upon this evidence a nonsuit was entered, to be confirmed if in the opinion of the Court the defendant is not liable.    But if in their judgment he is liable, it is agreed that the nonsuit is to be set aside, and a default entered.

*G. B. Moody*, for the plaintiff.    The certificate in this case conforms to that prescribed by St. 1831, c. 350, § 12.    The exact words of the St. 1835, c. 195, § 3, are not used in the certificate.    The latter statute repeals all inconsistent provisions.    If the certificate in this case was inconsistent with section 3d of the St. of 1835, the arrest was illegal, and not otherwise.

No particular form of words is imperatively required by the last statute.    Section 3d sets forth the circumstances under which, and the debts for which, an arrest may be made.    The intention to depart and establish a residence elsewhere, are the circumstances, and they are to be verified by oath.    In all statutes regulating forms of process, the words to be used are specifically stated ; as, in St. 1821, c. 63.    No definite form of words being prescribed by St. 1835, any language setting forth the facts by virtue of which an arrest may be made, is sufficient.    The certificate in this case was not merely not inconsistent with that required by the latter statute, but it contains every essential therein required.    The phraseology is the same, except that it uses " abscond and change his residence" where in the former statute " depart and establish his residence beyond the limits of the State" was used.    These expressions

are contained in the sections setting forth the facts which justify an arrest. The meaning of these expressions is the same; "to abscond," includes "to depart;" and "to change" a residence, involves the idea of establishing a new residence; else it would mean simply a loss of residence. To change, and abscond, imply the breaking up of the old and the establishing a new residence. It is immaterial that the change is mentioned in the first and the departure in the latter part of the certificate. The change referred to is not one within, but one out of the State. Both statutes being passed for the benefit of poor debtors, the words, though slightly varying, must have a similar construction. The case of *Whiting* v. *Trafton,* 4 Shep. 398, does not apply. The question there was on the sufficiency of a certificate. Two were annexed. The one sworn to in New Hampshire was void, as being made without the State. The other was defective, as neither complying with the provisions of the St. of 1831 or 1835, nor referring at all to the fact of residence.

*J. McDonald,* for the defendant. The legislature for years have passed laws for the benefit of poor debtors, to relieve them from the liability to be imprisoned for debt. They have been more and more liberal towards them, and have thrown around their person a high wall of protection which the creditor passes at his peril. If the creditor would take the pound of flesh, he must see that he spills not a drop of blood — that he does it with a knife that shall heal the veins and arteries as he separates them. He must strictly comply with every requisition of the statute; else he is without its protection. By the statutes of 1831 and 1835, "*no person*" was liable to arrest but under certain circumstances, respectively specified in those statutes. The oath taken, as appears by the certificate, was not in accordance with the St. of 1835, but followed the language of that of 1831. But the statute of 1835 enlarged the rights of the debtor, and changed the prerequisites to be observed, on the part of the creditor, to authorize an arrest. The language of the statutes would not have varied, had not the will of the legislature varied. The material fact that the debtor is about

Mason *v.* Hutchings.

to establish his residence beyond the limits of the State, is required to be sworn to by the creditor, in the last statute; and it not having been done in this case, the certificate is a nullity, and the arrest illegal.

The opinion of the Court was by

SHEPLEY J. — The suit of the plaintiff against Jackson was founded upon a contract; and in such cases it is provided by St. c. 195, that " no person shall be arrested or imprisoned on mesne process" except " when he is about to depart and establish his residence beyond the limits of this state with property or means exceeding the amount required for his own immediate support." And the oath of the creditor, his agent, or attorney, is required to be certified on such process in proof of the facts to authorize the arrest. The affidavit in this case states " that the debtor within named is about to change his residence and abscond beyond the limits of the State." There is a material difference between a change of residence, and the establishment of a residence without the limits of the State. The former may be temporary and within the State, the latter requires, that it should be permanent and without the State. To allege that he had absconded beyond the limits of the State, would tend rather to disprove than to prove, that he was about to establish a residence. The facts stated in the affidavit might be true, and yet the debtor might not be about to establish his residence beyond the limits of the State. If a strict compliance were not required, it would be easy to evade the provisions of the statute and to make use of process to arrest in many cases, for which no provision was made. It was decided in *Whiting* v. *Trafton,* 16 Maine R. 398, that, when the arrest was unauthorized, no action could be maintained against the sheriff for neglecting to take sufficient bail.

*Nonsuit confirmed.*